SAMUELS, J.
This case grows out of a contest for the succession to the estate, real and personal, of Catharine Bradford deceased.
The appellants claim under an alleged will of the decedent, conferring on them, as they insist, the estate in controversy; the appellees claim as heirs at law and next of kin of the decedent.
*In a contest of this nature between such parties, it is incumbent on the parties claiming under a will, to establish their claim: for if property be not effectually disposed of by will, it passes to the heirs at law and next of kin, by operation of the statute of descents and the statute of distributions.
The appellants, to sustain their claim, rely upon a paper, in form a will, exhibited to the County court of Rauquier county, where Catharine Bradford resided up to the time of her death; and by that court admitted to probat as a will. It was suggested, however, by the appellees’ counsel, in the argument here, that in as much as it appears on the face of the paper, that Catharine Bradford was a married woman at the time of executing it, it cannot have the effect of a will: and that she must be regarded as dead intestate. This objection could have had no force, in this suit, even if made in the court below: for it is well settled by the decisions of this court, that the sentence of a court of probat, of competent jurisdiction, admitting a will or writing in nature of a will, to probat, is conclusive evidence of the due making thereof, and that it cannot be denied in any collateral proceeding touching the will: that its validity can be tested only by resorting to the means provided by law for that specific purpose. See West v. West’s ex’or, 3 Rand. 373; Vaughan v. Doe ex dem. of Green, 1 Leigh 287; Wills v. Spraggins, 3 Gratt. 555; Parker’s ex’ors v. Brown’s ex’ors, 6 Gratt. 554.
The only remaining question before the court is, whether or not the will gives the estate to the appellants? The sole purpose in the construction of a will, is to find out how the maker of it intended to dispose of the property, and to apply the rules of law to such disposition ; thus the duty of a court is the same as in all other judicial enquiries, to wit, to ascertain the facts and declare the law thereon. In the *first branch of this duty, the court must look chiefly to the will itself. Although extrinsic proof is admissible under certain circumstances, for limited purposes, it is enough (for the purposes of this case) to say, it is not admissible to explain ambiguities patent on the face of the will. The language of the will itself must be relied on as the chief guide. If that language be ordinary and popular, its meaning is to be construed according to its usual acceptation; if technical, legal terms be used, they are to be construed in the sense which the law affixes. The courts, in their anxiety to seek aid in their investigations, have frequently and usually looked to adjudged cases, although it is said by high authority, that they can and do seldom afford assistance in ascertaining the intention in any case. Shermer v. Shermer’s ex’ors, 1 Wash. 265. The justice of this remark is fully verified by turning to the cases cited in the argument of this case: they are found in conflict with each other; and many of them are made to turn upon distinctions so exceedingly refined, not to say capricious, that they should be regarded as very unsafe guides in seeking for the intention of a plain testatrix, who expressed herself in the ordinary language in popular use. I hold that there is enough plainly expressed on the face of the will before us, to leave no doubt of the facts to what extent, and to whom the testatrix intended to dispose of the property herself; and to what extent she intended to confide the further disposition of her property to another.
After giving her husband an estate for life in the property, free from restrictions usually thrown around life estates, the will proceeds thus: “At the death of my husband, or before, if he chooses to relinquish his rights, I give all the land and other property on the premises we now occupy, to one or more of the children of Caroline A. Robinson, as he may designate; or authorize, should it be necessary, him to make such *other disposition of the same as he may deem proper, having full confidence in him that he will do what is right.”
The husband died in the life time of his wife, the testatrix; and thus the power of appointment, contemplated by the will, never vested in him, and was never executed. It is insisted by the appellants that the will, of itself, is sufficient to convey the estate to them; that is, to all the children of Caroline A. Robinson.
The testatrix, if she had thought it proper, might herself have given the estate directly *414 to all the children of Mrs. Robinson, or to one or more of them, as .she herself might have designated. So, if she thought it proper, she might forego the exercise of her power of disposition, and confer that power on another. There is a substantial and distinctly marked difference between the purpose of disposing of her property herself, and the purpose of authorizing another to make such disposition as he may deem right. If the testatrix had said in terms, “I will not, for my own reasons, dispose of my estate after the life estate I have given to my husband; but I authorize him to dispose of it after his death, to one or more of the children of Caroline A. Robinson ; or to make such other disposition of it as he may deem proper, ’ ’ it would clearly be held that the testatrix had not disposed of the remainder after the life estate at least to those children. The legal effect of the terms used is identical with that of the terms supposed; expressio unius exclusio est alterius: Having declared her purpose of authorizing another to make the disposition, is equivalent to a declaration that she will not herself make it.
If the testatrix had conferred the estate immediately upon the whole class of Caroline Robinson’s children, giving her husband authority to appoint the proportions *in which it should be divided, or giving him authority to designate one or more of the class who should take it, to the exclusion of all others of the class, in the events which have happened, the whole class would take equally. The will before us differs widely from the case supposed; it gives to “one”.or “more” of the class; that is, to one or more of a class, six in number. The questions are at once presented, Which “one?” How many “more” than “one?” And which of them? The answer is obvious: Such “one or more’ ’ as the husband may designate. I am not prepared to say, as a matter of fact apparent on this will, that the terms one or more mean all; or that an attempt to confer a power without limits on another, is in itself identical with a definite exercise of that power by the’principal. Such would be my construction, if the disposing clause had ended with the word “designate. ” If, however, any doubt remained, it must be apparent from the next clause, that the whole class, or any one or more of them, were not the certain objects of the testatrix’s bounty. She in terms authorizes her husband, should it be necessary, to make such other disposition of the estate as he might deem proper; she having confidence in him that he would do what is right.
The appellant’s counsel argued here, that this latter clause is to be understood as enlarging and defining the husband’s authority about the estate conferred on Mrs. Robinson’s children; that it was intended to give him power to make family settlements, or impose changes, as the necessities of the family might require. Such, I conceive, is not the true reading of the clause. It gives authority to dispose directly of the whole subject itself; not merely of a part thereof, or indirectly, by changes or otherwise. In terms, he is authorized to make a disposition of the whole subject, other than that contemplated for a part of the Robinson *family. The power conferred is coextensive with testatrix’s. confidence in her husband; which is declared to be full.
The appellant’s counsel argued here, that the will was intended to vest the husband with a power coupled with a trust; and that the execution of the power having been prevented by death, the court should execute the trust. There are cases in which the courts have taken upon themselves the duty of executing trusts which would otherwise be defeated for , want of trustees. These, however, are cases in which trusts, either express or implied, did exist. This is not the case here. The argument to have avathed anything, should further have shown that the -appellants are the cestuis que trust; which it has not done, and could not do.
On the whole case, I am of opinion that the objects, if any, of the testatrix’s bounty, so far as the remainder after the life estate is concerned, are so vaguely described that the will is void for ambiguity on its face.
I am further of opinion, that the testatrix had no definite purpose of disposing of that remainder herself, but only intended to confer a power of disposition on her husband.
It is immaterial to. consider whether the unrestricted life estate given to the husband, together with his unlimited power of disposition, should be regarded as giving him the absolute title to the estate; he having died in the life time of the testatrix, his interest, whatever it was, lapsed under the law then existing.
I am of opinion to affirm the decree.
ALLEN, MONCURE and LEE, Js., concurred in the opinion of Samuels, J.
DANIEL, J., concurred in affirming the decree.